IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAMELA R. FLANSBURG

Plaintiff, No. CIV S-04-1836 CMK

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

Defendant. ORDER

_______________________________/

Plaintiff, Pamela R. Flansburg, seeks judicial review of an administrative decision of defendant Commissioner of Social Security denying plaintiff's claim for disability benefits under the Social Security Act. This action is before the undersigned pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) and Local Rule 72-302. Plaintiff has filed a motion for summary judgment or remand. Defendant has filed a cross motion for summary judgment. As both parties have consented to magistrate jurisdiction, the matter is before the undersigned for decision. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross motion for summary judgment.

///

///

///

**I. BACKGROUND**

Plaintiff filed an application for disability insurance benefits (DIB) on March 20, 2002, alleging an inability to work due since June 1, 1997 due to fibromyalgia, degenerative disc disease, chronic fatigue syndrome, neuroma, sciatic nerve pain and rheumatoid arthritis. (Tr. 121-123, 132.) Plaintiff's application was denied initially and upon reconsideration. A hearing was held before an administrative law judge (ALJ) on April 16, 2004. (Tr. 33.) Plaintiff was represented by an attorney, and a medical expert and a vocational expert and plaintiff's mother testified. (Tr. 31-90.)

At the hearing before the ALJ, plaintiff testified that she was fifty years old, and she had attended two years of college where she received an AA degree in child development. (Tr. 39.) Plaintiff stated that she took junior college classes for a job when living in Bakersfield. (Tr. 39.) Plaintiff stated that she loved working in childcare but stopped because it was too hard for her. (Tr. 43-44.) Plaintiff stopped working seven years ago. (Tr. 49.)

Plaintiff testified that she has good and bad days. (Tr. 49.) Plaintiff related that she experienced swelling, especially of her feet and legs. (Tr. 47, 57.) She has pain in her right shoulder following surgery. (Tr. 50.) Plaintiff reported that surgery had helped her left shoulder a little bit. (Tr. 60.) She stated that she has lower back pain, which radiates down her right leg. (Tr. 54.) Plaintiff likened the pain in her leg to "electric shock" but stated that sometimes the pain was a "strong tingly down the leg, numbness." (Tr. 54.) The numbness occasionally occurs when she sits down for extended periods. (Tr. 54-55.) To relieve the tingling, plaintiff has to lie down for approximately thirty minutes. (Tr. 55.) Plaintiff stated that her weight has changed dramatically in the past year (she has gained twenty-five pounds, moving from 220 pounds to 245 pounds) and that she has problems with her knees being stiff and sore. (Tr. 58.)

Plaintiff reported that she was offered a three-level fusion for her back problems, which she refused. (Tr. 56.) Plaintiff did have a discogram and a nerve block performed to try to alleviate her back pain. (Tr. 56.) Plaintiff stated that the nerve block did not help her. (Tr.

57.) She states that she can only walk a block before she needs to sit down. (Tr. 57.) She stated that she has a panic disorder stemming from fear of being in enclosed spaces. (Tr. 60.) She also has a fear of having allergic reactions to medications. (Tr. 60.)

Plaintiff testified that she takes eleven medications either every day or as needed. (Tr. 46.) Every day plaintiff takes Prozac, Relafen, Flexeril, Atenolol, Lipitor and Premarin. (Tr. 46.) She takes Reglan three or four times a month and also has Tylenol with Codine No. 3 that she takes twice a week, although she is trying not to take them. (Tr. 47.) Plaintiff takes Xanax and Lasix for fluid retention. (Tr. 48.) Plaintiff reports medication side-effects of "drowsiness, [and] nausea occasionally." (Tr. 60.)

Plaintiff stated that she tries to take care of her personal needs, including her personal laundry. (Tr. 49-56.) On some days, plaintiff cannot pass food at the table due to pain in her arms. (Tr. 49.) She can feed herself but sometimes has problems dressing herself. (Tr. 49-50.) She cannot lift a gallon of milk and must have milk poured for her when she uses it. (Tr. 50.) Notes from plaintiff's physician reflect that, in July of 2002, plaintiff was going to the gym five nights a week with her husband. (Tr. 52-53.) Plaintiff stated that, at the time of the hearing, she had not been to the gym in over a year. (Tr. 53.)

Medical Expert (ME), Leo van der Reil, M.D., testified that Plaintiff's medical impairments did not satisfy any listed impairment. (Tr. 67.) The ME stated that part of plaintiff's physical problems might be related to her depression and part might be related to her medication. (Tr. 67.) He noted that plaintiff did have some evidence of a degree of degenerative disc disease, but stated that the "degree of symptomatology was not in keeping with the physical findings." (Tr. 67.) The ME stated that plaintiff's extruded disk L4/L5 could have deteriorated since the time of diagnosis eight years ago due to plaintiff's weight gain and other factors. (Tr. 70.) The ME stated that there was no evidence of such deterioration, but that was the logical conclusion. (Tr. 70.) The ME testified that there was no evidence in the record that plaintiff had fibromyalgia; plaintiff did not have the "so-called classical findings" of the disease. (Tr. 72.)

The ME recognized, after questioning by plaintiff's attorney, that fibromyalgia was shown in the file; however, he stated that, when written in the charts, fibromyalgia did not have the same meaning as the diagnosis referred to by the Social Security Administration. (Tr. 73.) The ME said that plaintiff's high "sed. rate"in September of 2002 was not necessarily indicative of fibromyalgia, but instead might have been caused by medications. (Tr. 74.)

Plaintiff's mother, Joy J. Armstrong, testified about plaintiff's daily living activities. (Tr. 76.) Ms. Armstrong testified that plaintiff did not do many household chores because she could not use her arms or be on her feet. (Tr. 79.) She stated that plaintiff sometimes needs help in dressing herself but that plaintiff could take care of her personal hygiene. (Tr. 79.) Ms. Armstrong stated that plaintiff has to sit or lie down during the course of the day and cannot walk for more than ten minutes. (Tr. 79.)

Vocational Expert (VE), John Velton, testified that plaintiff worked as "a teacher's aide II" (light semi-skilled work) and could preform her prior work. (Tr. 82-89, 106.) The VE noted that the exertional level in plaintiff's former work was light, although it may have reached the medium level. (Tr. 83.) He stated that plaintiff's job involved frequent reaching, handling and fingering. (Tr. 84.) The VE stated that this job would require occasional agility. (Tr. 89.)

The relevant medical records reveal the following. Plaintiff was diagnosed with degenerative disc disease (Tr. 212, 283), status post shoulder impingement syndrome (Tr. 285, 293), anxiety disorder (Tr. 236-237), and probable degenerative joint disease of the right knee. (Tr. 210, 15). Chronic fatigue syndrome has not been diagnosed, but is noted in plaintiff's medical history. (Tr. 15, 246, 288-89.)

A physician at Kaiser Permanente (Kaiser) diagnosed plaintiff with fibromyalgia after noting that plaintiff showed "some chronic fibromyalgia, LBP, etc." (Tr. 203.) The diagnosis apparently was not questioned or confirmed by other medical providers and was repeated in plaintiff's medical records by way of history. (Tr. 15, 177, 179, 245, 257.)

In July 2002, plaintiff was evaluated by Diane Van Arsdale, Ph.D. for possible depression. (Tr. 245-47.) Dr. Arsdale noted that plaintiff did not "really see herself as depressed–only reacting to chronic pain." (Tr. 247.) Dr. Arsdale noted that, based on plaintiff's descriptions, plaintiff did not meet the criteria for pain disorder. (Tr. 246-48.) Dr. Van Arsdale diagnosed anxiety disorder, not otherwise specified (NOS) with "mixed anxiety–depression," and assigned a global assessment of functioning (GAF) of 60.[1] Dr. Van Arsdale suggested therapy and medication evaluation to "reduce depression and anxiety" and "improve coping skills." (Tr. 243.)

In September 2002, plaintiff was evaluated by a "chronic pain team" at Kaiser; noted to have a high sedimentation rate; and referred to a rheumatologist for "evaluation of possible PMR" (polymyalgia rheumatica). (Tr. 16, 213, 228-230.) Plaintiff apparently did not follow-up on the referral.

In September 2002, consultative orthopedist Calvin Pon, M.D., diagnosed "chronic low back pain" and "chronic intermittent right knee pain" and said that plaintiff could lift and carry twenty pounds frequently, twenty to thirty pounds occasionally; stand or walk six hours in an eight hour workday; sit six hours in an eight hour workday and occasionally stoop, crouch, kneel, squat and climb ladders. (Tr. 210.) Dr. Pon assigned "no limitations" in reaching, fine/gross manipulation, crawling, climbing stairs, or pushing/pulling arm/hand and leg/foot controls. (Tr. 210-211.) He noted that plaintiff was able to drive and able to take public transportation. (Tr. 211.)

Consultative psychiatrist Robert Hepps M.D. examined plaintiff in September of 2002. (Tr. 214-15.) Dr. Hepps diagnosed panic disorder and opined that plaintiff's disability was primarily physical. (Tr. 215.) He stated that "because of memory and concentration

---

[1]GAF 51-60: Indicates "moderate symptoms" (e.g., flat affect, circumstantial speech, occasional panic attacks) OR "moderate difficulty" in social, occupational, or school functioning (e.g., few friends, conflicts with peers/co-workers). Diagnostic & Statistical Manual of Mental Disorders, 32, Amer. Psych. Assn. (4th ed.)

problems she would probably have a very slight impairment in remembering instructions and carrying them out." (Tr. 215.) He opined that plaintiff could relate appropriately to co-workers and supervisors and "could respond appropriately to routine changes in a workplace setting." (Tr. 215.)

In October 2002, a State agency physician opined that plaintiff could lift/carry twenty pounds occasionally, ten pounds frequently; stand and/or walk at least two hours in an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch and crawl; and was unlimited in pushing/pulling hand and foot controls. (Tr. 287-89.)

In a written decision dated June 2, 2004, the ALJ found that plaintiff's medically determinable impairments significantly limited her ability to perform basic work activities, but that plaintiff had not established that she had any impairment or combination of impairments that met or equaled the Listed Impairments. The ALJ considered plaintiff's subjective statements concerning pain and other symptoms, but did not find them credible. He concluded that the plaintiff was not under a disability within the meaning of the Social Security Act at any time on or before the date of his decision.

Plaintiff submitted additional medical records after the ALJ's rendered his decision. (Tr. 300, 9.) The Appeals Council made the additional evidence part of the record. (Tr. 8.) In reviewing plaintiff's case, the Appeals Council considered plaintiff's additional evidence. (Tr. 5.) On July 19, 2004, the Appeals Council denied plaintiff's request for review, making the decision of the ALJ final. The plaintiff filed a timely appeal in this court on September 2, 2004.

## II. STANDARD OF REVIEW

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole. See Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573,

575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

Plaintiff argues that the ALJ erred in finding plaintiff's testimony not credible. The Ninth Circuit has consistently held that the ALJ is responsible for determining credibility and resolving conflicts in medical testimony. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Although the ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities, see Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995), the ALJ's credibility findings must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). In determining whether subjective complaints are credible, the ALJ may consider, among other things, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment and the applicant's daily activities. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997).

///

The ALJ's determination of plaintiff's credibility is supported by substantial evidence in the record. The ALJ noted that plaintiff testified in 2004 that she had moved from Pittsfield, California to Bakersfield, California in November of 2003 but had not yet visited her new primary care physician. (Tr. 22.) The ALJ also took into account that plaintiff had alleged disabling fibromyalgia and rheumatoid arthritis, but there was no indication that plaintiff had followed through with her referral to a rheumatologist. (Tr. 22.) The ALJ noted that, although plaintiff alleged disabling mental impairments, the medical records indicated that she had met with a psychiatrist only twice and then stopped attending therapy sessions because, as she testified at the hearing, she "just sort of stopped going." (Tr. 22.) The ALJ noted that plaintiff was able to travel to Kenya in 1998, which was after she alleged a disability beginning on June 1, 1997. (Tr. 22.)

The ALJ noted that the objective findings in the medical record did not support plaintiff's complaints. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(stating that the ALJ may properly consider medical evaluations which discredit subjective complaints). The medial record reveals that plaintiff had some pathology in her spine since at least January 1993; however, plaintiff was not prevented from working. Finally, the ALJ considered that, following plaintiff's evaluation by the Kaiser pain team, she had the opportunity for a rheumatology evaluation, a referral to a spine clinic, edema management/steroid injections in her feet, injections to her knees, acupuncture/acupressure, neurocognative screening, fibromyalgia/pain management group appointments and continued mental health treatment but that plaintiff did not take advantage of any of these treatment options. (Tr. 22.) See e.g., Jonson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (stating that the ALJ may consider the conservative nature of treatments when evaluating subjective complaints).

The ALJ's findings support his conclusion that plaintiff's complaints were not wholly credible. Plaintiff's assertion that the ALJ's credibility assessment was based on an incomplete record is not persuasive. Plaintiff makes no showing of how the post-decision

evidence would have impacted the ALJ's decision. The Appeals Council considered plaintiff's additional evidence in reviewing her case and concluded that the evidence did not provide a basis for changing the decision. (Tr. 5-6.) The undersigned has also reviewed the additional evidence submitted by plaintiff and concludes that nothing in the additional medical records undermines the ALJ's findings concerning plaintiff's credibility. See Morgan v. Comm'n of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (stating that if a credibility finding is supported by substantial evidence in the record, the court may not engage in second guessing). The undersigned finds that the ALJ's credibility determination is supported by substantial evidence in the record.

Plaintiff next contends that the ALJ failed to give sufficient consideration to plaintiff's mental impairments. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(citing SSR 85-28). A claimant must prove a mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statements of symptoms alone will not suffice. See 20 C.F.R. §§ 404.1508, 416.908. It is up to the Administrative Law Judge to resolve conflicts and ambiguities in the evidence. See Sandgathe v. Chater, 108 F.3d 978, 979 (9th Cir. 1997).

Here, the ALJ considered that Dr. Van Arsdale diagnosed plaintiff with anxiety disorder, NOS, with mixed anxiety and depression and assigned a GAF of 60, which indicated that plaintiff had moderate symptoms and moderate difficulty in social and work settings. (Tr. 21, 248.) He noted that plaintiff testified that she attended approximately three therapy sessions after Dr. Van Arsdale's diagnosis. (Tr. 21.) The ALJ considered that Dr. Robert Hepps diagnosed plaintiff with panic disorder and that Dr. Hepps opined that, due to her symptoms, plaintiff would have a very slight impairment in remembering instructions and carrying them out. (Tr. 21.) The ALJ further noted that plaintiff told a nurse, the day after Dr. Arsdale's

diagnosis, that she did not feel depressed and that plaintiff stated that Prozac helped her mood and did not cause side effects. (Tr. 21, 46); See Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (stating that controllable impairments are not disabling). Plaintiff did not provide medical evidence to support her subjective complaints of mental illness. The ALJ here summarized the facts and evidence in detailed and thorough fashion, stating his interpretation and making findings. Sandgathe, 108 F.3d at 979. The undersigned therefore concludes that there was substantial evidence supporting the ALJ's decision that plaintiff's mental impairments were not disabling.

Plaintiff's next argument is that the ALJ erred as a matter of law by dismissing the testimony of plaintiff's mother. Lay testimony as to a "claimant's symptoms or how an impairment affects ability to work" is "competent evidence" and "cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Testimony by a third party alone is insufficient to establish disability. See 20 C.F.R. § 404.1529.

In the present case, the ALJ considered the testimony of plaintiff's mother and found it to be neither wholly credible nor supported by the record as a whole. The ALJ noted that the testimony of plaintiff's mother was "apparently founded" on her experiences with plaintiff since plaintiff moved to Bakersfield, California in 2003, which was well after her date last insured. (Tr. 22.) In short, the ALJ gave specific reasons stating that the testimony of plaintiff's mother was more relevant to plaintiff's condition after December 2002, which was the date by which plaintiff must have established disability. The undersigned finds that the ALJ properly considered the testimony of plaintiff's mother.

Plaintiff's final argument is that the ALJ improperly relied on vocational expert (VE) testimony because he did not ask hypothetical questions incorporating plaintiff's documented impairments. The undersigned notes that the ALJ did not need to rely on the

testimony of the VE in making a "step four"[2] finding that plaintiff can return to her previous work. See Matthews v. Shalala, 10 F.3rd 678, 681 (9th Cir. 1993) (stating that vocational expert testimony is helpful but not necessary in past work finding). However, even if the ALJ were required to rely on an VE, he properly posed a hypothetical to the VE incorporating plaintiff's impairments. As long as the hypothetical question is supported by substantial evidence, the ALJ may reject other limitations alleged by a claimant. See Magallanes v. Bowen, 881 F.2d at 756.

The VE here testified that plaintiff's prior position of pre-school teacher's aide II involved standing approximately fifty percent of the time, sitting fifty percent of the time and generally did not involve lifting. (Tr. 22.) The VE testified that, prior to plaintiff's date last insured and with the residual functional capacity to perform a range of light work, with an alternate sit or stand option for approximately four hours of an eight hour work day, with limited stooping, pushing or pulling and with no overhead work, the plaintiff could still perform her past relevant work as a pre-school teacher's aid. Because the hypothetical posed by the ALJ was supported by the medical evidence, see Osenbrock v. Apfel, 240 F.3d 1157, 1162-63 (9th Cir. 2001), the ALJ was free to reject other more restrictive hypothetical functional capacities posed by plaintiff's attorney. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1986). The undersigned finds that the ALJ properly relied on the testimony of the VE in finding that plaintiff could perform her past work.

///

///

///

///

---

[2]Step four of the Social Security five step disability evaluation is, after considering all impairments in combination and determining the claimant's residual functional capacity, can the claimant still perform past relevant work. Only if the answer is no, should the ALJ continue to step five of the evolution, which requires the use of a VE. Sandgathe v. Chater, 108 F.3d 978, 979 (9th Cir. 1997).

**IV. CONCLUSION**

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied,

2. The Commissioner's cross motion for summary judgment is granted and;

3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: February 9, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE